UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Steven Pelletier</u>,
     Petitioner

     v.                             Civil No. 05-cv-417-SM
                                         Opinion No. 2008 DNH 139
<u>Warden, New Hampshire</u>
<u>State Prison</u>,
     Respondent

## O R D E R

Steven Pelletier, an inmate at the New Hampshire State Prison, petitions for a writ of habeas corpus. 28 U.S.C. § 2254. Before the court are respondent's motion for summary judgment and petitioner's motion for partial summary judgment. Each motion is opposed. For the reasons given, respondent's motion is granted in part, and petitioner's motion is denied.

## Background

Pelletier was tried on thirty-two charges of sexually assaulting his stepdaughter over the course of several years in successive family homes located, in chronological order, in Derry, Manchester, Pelham, and Hudson, New Hampshire. "At the close of the evidence, the trial court dismissed twenty-seven indictments because they failed to track the language of the statute with regard to the victim's age at the time of the

offense." <u>State v. Pelletier</u>, 149 N.H. 243, 246 (2003).  Of the
five remaining charges, one pertained to an incident in Derry,
and the other four pertained to incidents in Manchester.  In
conjunction with his dismissal of the indictments relating to
alleged incidents in Pelham and Hudson, the trial judge discussed
with counsel various ways of explaining the dismissal to the jury
and various ways of dealing with the evidence the State had
introduced to prove the charges that had been dismissed.  After
the court and counsel outlined a mutually satisfactory approach
to the issue – allowing evidence of the Pelham and Hudson
incidents to be considered by the jury, but only on the issue of
the victim's credibility as a witness – the court conducted a
colloquy with Pelletier.  The purpose was to make sure that he
knowingly assented to allowing the jury to consider evidence
about the Pelham and Hudson incidents for a limited purpose.
Pelletier was convicted on all five of the charges submitted to
the jury: four counts of felonious sexual assault and one count
of aggravated felonious sexual assault.

Pelletier was sentenced to five consecutive terms of five to
thirty years of imprisonment.  The procedural history of this
case includes: (1) a direct appeal, in which the state supreme
court affirmed Pelletier's convictions; (2) a motion for a new

trial, which the state superior court denied in a summary order,[1] and which the state supreme court declined to review; and (3) a pleading titled "Petition to Correct Illegal Sentence – or – for Habeas Relief," which the state trial court denied, and which the state supreme court declined to review, in light of its decision in Duquette v. Warden, New Hampshire State Prison, 154 N.H. 737 (2007), rejecting the same legal argument on which Pelletier based his request for relief.

Pelletier's federal habeas corpus petition, as construed by the magistrate judge on preliminary review, asserted the following grounds for relief:

1. The state conviction was obtained in violation of Pelletier's Fourteenth Amendment Due Process rights, and Sixth Amendment right to a fair trial, because the prosecutor engaged in misconduct when, in his summation, he:

   a. Vouched for the credibility of the prosecutrix;

   b. Attacked defense counsel's ethics; and

   c. Expressed his personal opinion of the evidence;

---

[1] In the order denying petitioner's motion for a new trial, the trial court wrote: "[U]pon a careful review of the pleadings, I now find and rule that the defendant has failed to articulate any compelling argument for the relief that he seeks.  In view of the foregoing, I find and rule that as the motion for a new trial is not meritorious, it is hereby DENIED."  (Pet., Appx. at 11.)

2.   The conviction violates Pelletier's Fourteenth
     Amendment Due Process rights and Sixth Amendment
     right to the effective assistance of counsel
     because his trial counsel:

     a.   Failed to have the charges against him
          severed for separate trials; and

     b.   Failed to obtain [a mistrial] at the close of
          the state's case;

3.   The conviction violates Pelletier's Fourteenth
     Amendment Due Process rights and Sixth Amendment
     right to a fair trial because the trial judge
     failed to grant a mistrial at the close of the
     state's case;

4.   The conviction violates Pelletier's Fourteenth
     Amendment Due Process rights and Sixth Amendment
     right to a fair trial because the trial judge
     failed to conduct a proper colloquy before
     depriving Pelletier of his right not to be tried
     by evidence of uncharged bad acts;

5.   The conviction violates Pelletier's Fourteenth
     Amendment Due Process rights and Sixth Amendment
     right to a fair trial because the trial judge
     violated Pelletier's marital privilege by allowing
     Pelletier's wife to testify concerning their
     sexual relationship;

6.   The conviction violates Pelletier's Fourteenth
     Amendment Due Process rights and Sixth Amendment
     rights to a fair trial and the effective
     assistance of counsel because the trial judge
     improperly allowed an expert witness:

     a.   to testify outside of her area of expertise;
          and

     b.   to testify to matters defense counsel had not
          previously been made aware of.

7.   The conviction violates Pelletier's Fourteenth
     Amendment Due Process rights and Sixth Amendment
     right to a fair trial because the trial judge

allowed third-party hearsay testimony regarding
the prosecutrix's allegations into evidence;

8.   The sentence violates Pelletier's Fourteenth
     Amendment Due Process rights and Eighth Amendment
     right against cruel and unusual punishment because
     the trial judge sentenced Pelletier to consecutive
     sentences when he possessed neither statutory nor
     constitutional authority to do so.

Subsequently, petitioner waived Grounds 1(a) and 7.

## The Legal Standard

Federal habeas corpus relief may be granted "only on the
ground that [a petitioner] is in custody in violation of the
Constitution or laws or treaties of the United States."  28
U.S.C. § 2254(a).  Thus, "federal habeas corpus relief does not
lie for errors of state law."  Evans v. Verdini, 466 F.3d 141,
145 (1st Cir. 2006) (quoting Lewis v. Jeffers, 497 U.S. 764, 780
(1990)).

Passage of the Anti-Terrorism and Effective Death Penalty
Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), has significantly
limited the power of the federal courts to grant habeas corpus
relief to state prisoners.  When a petitioner's claim "was
adjudicated on the merits in State court proceedings," id., a
federal court may disturb a state conviction only when: (1) the
state court adjudication "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2); or (2) the state court's resolution of the issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); see also Williams v. Taylor, 529 U.S. 362, 399 (2000).

"AEDPA's strict standard of review only applies to a claim that was adjudicated on the merits in state court proceedings." Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003) (quoting Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001); citing Ellsworth v. Warden, 333 F.3d 1, 6 (1st Cir. 2003)).  "A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'"  Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007) (quoting Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001)).  "When the state court has never addressed the particular federal claim at issue, federal review is de novo." Dugas v. Coplan, 506 F.3d 1, 7 (1st Cir. 2007) (citing Pike v. Guarino, 492 F.3d 61, 67 (1st Cir. 2007)).  "As [the court of

appeals for this circuit has] noted, a federal court 'can hardly defer to the state court on an issue that the state court did not address.'" Dugas, 506 F.3d at 7 (quoting Fortini, 257 F.3d at 47).

## Discussion

Respondent argues that each of petitioner's grounds for relief other than Ground 2 has been procedurally defaulted, and further argues that he is entitled to prevail on the merits on Grounds 2, 5, and 6.  Petitioner objects to respondent's summary judgment motion and, in pleadings identical to his objections, moves for summary judgment on Grounds 1b, 1c, 2a, 3, 4, and 8. Petitioner does not, however, address Grounds 5 or 6 on the merits.

Ground 1

Ground 1 is petitioner's two-part claim that he was convicted in violation of the Fourteenth Amendment due process guarantee and his Sixth Amendment right to a fair trial because the prosecutor made improper arguments during his summation.[2] Relying on State v. Ayer, 150 N.H. 14, 34 (2003), respondent

---

[2] Ground 1 initially included three parts, but Ground 1(a) has been abandoned.

7

argues that he is entitled to summary judgment on Ground 1 because petitioner procedurally defaulted the prosecutorial misconduct issue by presenting it in his notice of appeal but failing to brief it.  Petitioner objects and also moves for summary judgment on Grounds 1b and 1c.

"Normally, the fact that a claim is procedurally defaulted in state court is an adequate and independent state ground precluding federal habeas relief."  Walker v. Russo, 506 F.3d 19, 21 (1st Cir. 2007) (citing Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Gunter v. Maloney, 291 F.3d 74, 79 (1st Cir. 2002); Burks v. Dubois, 55 F.3d 712, 716 (1st Cir. 1995)).  More specifically:

> A habeas claim is procedurally defaulted in either of two situations.  First, a claim is procedurally defaulted if the state court has denied relief on that claim on independent and adequate state procedural grounds.  See Lambrix v. Singletary, 520 U.S. 518, 522-23 (1997).  Second, a claim is procedurally defaulted if it was not presented to the state courts and it is clear that those courts would have held the claim procedurally barred.  See Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004).

Pike, 492 F.3d at 73 (parallel citations omitted).

In his notice of appeal, Pelletier raised the following issue: "WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT'S MOTION FOR A MISTRIAL WHERE THE STATE'S ATTORNEY MADE ATTACKS ON DEFENSE COUNSEL AND RENDERED PERSONAL OPINIONS AS TO THE RELIABILITY OF CERTAIN PIECES OF EVIDENCE." (Pet'r's Resp. (document no. 9), Ex. 3, at 5.)  However, Pelletier did not brief that issue, and it was not addressed in the state supreme court opinion in his direct appeal.  In his motion for a new trial, Pelletier argued that "[i]n the trial in the instant case, the prosecutor vouched for the credibility of his witnesses, gave personal opinions on the reliability of evidence, and attacked the ethics of defense counsel."  (Pet., Appx. at 13.) Notwithstanding Pelletier's failure to brief the prosecutorial misconduct issue in his direct appeal, the State raised no procedural objection to litigating that issue in the context of Pelletier's motion for a new trial, and addressed it on the merits.  The trial court denied the motion, and in his appeal from that denial, Pelletier raised the issue again, calling it "Constitutional in nature."  (Pet., Appx. at 8.)

Respondent argues that petitioner procedurally defaulted the prosecutorial misconduct issue because he failed to brief it in his direct appeal, and it is well settled that the New Hampshire

9

Supreme Court "confine[s] [its] review to only those issues that [an appellant] has fully briefed." State v. Blackmer, 149 N.H. 47, 49 (2003) (citing State v. Chick, 141 N.H. 503, 504 (1996)). Respondent's argument is not persuasive.

This is neither a situation in which "the state court has denied relief on [a] claim on independent and adequate state procedural grounds," Pike, 492 F.3d at 73, nor a situation in which the claim at issue "was not presented to the state courts and it is clear that those courts would have held the claim procedurally barred." Id. Rather, the prosecutorial misconduct issue was presented to the state court in petitioner's motion for a new trial, was decided on the merits by the trial court, and was presented to the state supreme court in constitutional terms. The State may have had a valid procedural default argument in opposition to petitioner's motion for a new trial. But, it responded to that motion on the merits, and the trial court presumably denied it on the merits as well. Thus, even if Pelletier did procedurally default that argument by failing to brief it in his direct appeal, it was revived by the trial court's decision on the merits of Pelletier's motion for a new trial. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) (citing Harris v. Reed, 489 U.S. 255, 262 (1989)) ("State procedural bars

10

are not immortal . . . they may expire because of later actions
by state courts.  If the last state court to be presented with a
particular federal claim reaches the merits, it removes any bar
to federal-court review that might otherwise have been
available.")  Because Ground 1 was addressed on the merits in the
state courts after the point where respondent says that issue was
procedurally defaulted, respondent is not entitled to summary
judgment based upon procedural default.

Turning to the merits, petitioner argues that he is entitled
to summary judgment on both Ground 1b, alleging that the
prosecutor attacked his trial counsel's ethics, and Ground 1c,
alleging that the prosecutor offered a personal opinion on the
evidence.  In his objection to summary judgment, respondent does
not address the merits, choosing instead to reassert, by
reference, the procedural default argument he made in his own
motion for summary judgment.

In regard to Ground 1b, petitioner identifies the following
as specific instances of improper attacks on his trial counsel's
ethics made by the prosecutor in his closing argument: (1)
"Attorney Garrity through . . . half quotes, out-of-context
questions, asking [the victim] about things she was never asked

about . . ." (Trial Tr. ("Tr.") at 848, ll. 12–14); (2) "Don't
buy what Attorney Garrity is trying to sell." (Tr. at 851, ll.
15–16); and (3) "He's using the system, taking advantage of it,
putting his spin." (Tr. at 853, ll. 6–7).  At the outset of its
jury instructions, the trial court told the jury: "To correct any
allegation, if any that you perceived, that the defense counsel
were improper or unethical in their closing arguments (sic), I
instruct you that there was no improper or unethical, uh,
behavior or actions by the defense counsel."  (Tr. at 871, ll.
11–16.)  In petitioner's view, the comments he complains about
were unethical because they "emit that counsel seeks to bamboozle
the jury through deceit, dishonesty and or misrepresentation."
(Pet'r's Mot. Summ. J., Attach. 1, at 6.)  He further contends
that the impropriety was not cured by the trial court's
instruction.

In regard to Ground 1b, petitioner contends that the
prosecutor gave a personal opinion of the evidence in his closing
argument by saying that it was "consistent with" testimony that
was never actually introduced at trial, thus "giving credence to
unproduced evidence that could not be scrutinized by the jury."
(Pet'r's Mot. Summ. J., Attach. 1, at 8.)  Pelletier's counsel
objected to the prosecutor's argument, and in response, the trial

court instructed the jury as follows: "In the event that you perceive that the State's counsel in his closing argument gave a personal opinion, or vouched for, or affirmed the credibility of the complaining witness, the alleged victim, that is not permitted.  You make your own determination as to the credibility of all witnesses, including the alleged victim."  (Tr. at 871, ll. 17-23.)

If, indeed, the prosecutor's closing argument was improper, it was only mildly so.  And, it was immediately addressed by the trial court's curative instructions, which the jurors may be presumed to have understood and followed.  See United States v. Sampson, 486 F.3d 13, 47 (1st Cir. 2007) (citing United States v. Benedetti, 433 F.3d 111, 118 (1st Cir. 2005); United States v. De Jesus Mateo, 373 F.3d 70, 73 (1st Cir. 2004)).  Moreover, "[o]n habeas review, [the court's] function is not to punish a state for prosecutorial misconduct unless that misconduct gave rise to a constitutional error that prejudiced the petitioner." Mastracchio v. Vose, 274 F.3d 590, 604-05 (1st Cir. 2001).  Here, petitioner falls far short of establishing a constitutional error that prejudiced him.  Accordingly, he is not entitled to summary judgment on Ground 1, and cannot prevail on that claim.  Judgment shall be entered in favor of respondent.

13

Grounds 2 and 3

Ground 2 is petitioner's claim that he was convicted in violation of the Fourteenth Amendment due process guarantee and his Sixth Amendment right to the effective assistance of counsel, because his counsel failed to have the charges against him severed for separate trials (Ground 2(a)) and failed to move for a mistrial after the trial court dismissed twenty-seven of the thirty-two charges (Ground 2(b)).  Petitioner also argues, in the alternative, in Ground 3, that if his counsel did move for a mistrial,[3] the trial court violated his Fourteenth and Sixth Amendment rights by failing to grant the motion.  Because the court is satisfied, from a review of the transcript, that petitioner's trial counsel did not move for a mistrial, Ground 3 is moot.

Respondent moves for summary judgment on the merits of Ground 2, arguing that defense counsel's performance was not objectively unreasonable.  Petitioner, in turn, moves for summary

---

[3] The transcript gives no indication that petitioner's counsel moved for a mistrial after the trial court dismissed the twenty-seven charges, but because there is one point (Tr. at 808, ll. 8-10), at which, arguably, counsel may have moved for a mistrial, petitioner initially framed his claim in the alternative.

judgment on Ground 2(a), and addresses the mistrial issue in the context of Ground 3.

"A criminal defendant claiming a Sixth Amendment ineffective assistance of counsel violation must establish that (1) 'counsel's representation fell below an objective standard of reasonableness,' and (2) 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Smiley v. Maloney, 422 F.3d 17, 20 (1st Cir. 2005); citing Strickland v. Washington, 466 U.S. 668, 694 (1984)).  With regard to the first prong of the test:

> This is a highly deferential review, making every effort to "eliminate the distorting effects of hindsight." [Strickland, 466 U.S.] at 689.  As the Supreme Court emphasized in Yarborough v. Gentry, the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." 540 U.S. 1, 8 (2003).  When examining counsel's conduct, the court considers the facts of the particular case from counsel's perspective at the time. Strickland, 466 U.S. at 690.  Counsel has "wide latitude in deciding how best to represent a client," Gentry, 540 U.S. at 5–6, and benefits from a strong presumption that he or she rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions.  Strickland, 466 U.S. at 690.

Sleeper v. Spencer, 510 F.3d 32, 38–39 (1st Cir. 2007) (parallel citations omitted).  With regard to the second prong, "[a]

reasonable probability is a probability sufficient to undermine confidence in the outcome." Sleeper, 510 F.3d at 39 (citation omitted).  Moreover, while petitioner must prove both deficient performance and prejudice to prevail, Sleeper, 510 F.3d at 38, "a reviewing court need not address both requirements if the evidence as to either is lacking.  As the Supreme Court has recognized, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'"  Id. at 39 (quoting Strickland, 466 U.S. at 697).

### A. Severance

While the record is incomplete, it appears that Pelletier's trial counsel assented to the State's motion to consolidate the charges against him.  (Pet., Appx. at 25.)  Petitioner now argues that his trial counsel provided him with ineffective assistance by failing to file a pre-trial motion to sever the charges against him and seek four separate trials, one for each of the four municipalities in which he was alleged to have assaulted his stepdaughter.  However, while petitioner argues that his counsel "inexplicably did not move to sever these charges for separate trials," he does not suggest any grounds that would have supported a motion to sever, and does not indicate how the

16

decision not to seek severance was objectively unreasonable <u>at
the time it was made</u>, which is the relevant test.  <u>See
Strickland</u>, 466 U.S. at 690.  Rather, the point of petitioner's
argument is that he was unfairly prejudiced by the jury's being
exposed to a substantial amount of evidence, <u>i.e.</u>, evidence
pertaining to the twenty-seven counts that were dismissed, that
was irrelevant to the five charges that were ultimately submitted
to it.

     The alleged assaults occurred in four different
municipalities only because the family moved three times.  No
apparent grounds existed for moving to sever the charges prior to
trial, and no grounds on which the trial court would likely have
granted a motion to sever are apparent.  Thus, with respect to
the severance issue, petitioner's counsel did not provide
objectively unreasonable assistance by not moving to sever, and
petitioner was not prejudiced by his counsel's failure to do so.

     <u>B. Mistrial</u>

     To properly analyze petitioner's claim that his trial
counsel provided him with constitutionally ineffective assistance
by failing to move for a mistrial, some background is necessary.
On the morning of the final day of trial, the trial court

dismissed twenty-seven of the thirty-two indictments on which petitioner had been tried.  (Tr. at 809.)  The five remaining charges pertained to incidents alleged to have occurred in Derry and Manchester.  (Tr. at 809, 815.)  Thus, no charges based on incidents in Pelham or Hudson survived.

After he dismissed the Pelham and Hudson indictments, the trial judge asked counsel for both sides whether any evidence needed to be withdrawn from the jury because it pertained to charges that were no longer part of the case.  (Tr. at 810.) Initially, Pelletier's counsel moved to strike photographs of a chair and the results of DNA testing of a semen stain on the chair, on grounds that the incident of masturbation in that chair the victim testified about took place in Pelham.  (Tr. at 810, 813, 819.)  A discussion then ensued concerning the fairness of allowing defense counsel to attack the victim's credibility based on cross-examination about the Pelham and Hudson incidents while not allowing the State to rehabilitate her credibility with the DNA evidence.  As Pelletier's counsel conceded, "I guess I'm asking to have my cake and eat it too." (Tr. at 820, ll. 21-22.) In that context, having his cake and eating it too meant having the DNA evidence excluded while having the Pelham/Hudson credibility evidence remain before the jury.

18

After considerable discussion, on the record, the trial court and counsel fashioned a solution under which: (1) the physical evidence from Pelham would stay in; (2) defense counsel would be able to use evidence concerning Pelham and Hudson to challenge the victim's credibility; and (3) the jury would be instructed that only indictments pertaining to Derry and Manchester remained in the case and that evidence concerning Pelham and Hudson was to be considered only with regard to the victim's credibility.

Subsequently, the following discussion and colloquy took place:

> THE COURT:  One more "one."  This judge is further worried, and I want to get something clarified on the record as to the extent of the evidence.
>
> Here's what we have, and here's what I'm in a quandary about.
>
> We're going with the five, the instructions have been modified to reflect everything that pertains to the five indictments.  The question has to do with the evidence that can be argued, and I want to cover again what it is.  And, uh . . . my indication to you people may not have been right about the evidence.
>
> I'm not so sure it's proper, unless there is an agreement with the defendant on board specifically, for all evidence to be considered by the jury on the issue of credibility and then as to guilt or innocence, only that evidence that pertains to these five indictments, and I would read these five indictments to the jury.

We could do what we were indicating before, remove those exhibits having to do with Pelham, State's 1, 7 and 8, and Defendant's A.  And that would mean all evidence would be out for all purposes, uh, as to Hudson and Pelham, and they only could consider evidence pertaining to the five indictments, which means the DNA is out.

If we're going to have it the way I left it with you, is that the – no evidence, no exhibits will be removed, and all evidence that's been presented in this trial may be considered by the jury for credibility purposes, and the evidence on guilt or innocence may only be considered as it pertains to those indictments.

I want to be sure everybody's on the record and including specifically Mr. Pelletier, so that he understands this, in the event of an appeal, so that if this issue is revisited from on–high, everybody has the protection of the record.

MR. GARRITY:  Your Honor, we would argue all of the evidence, we'd just ask the Court to give a limiting instruction to the evidence with respect to Pelham and Hudson can be considered with respect to, uh, any charge [that] remain[s] pending, but is only to be considered with respect to credibility.

THE COURT:  And the State's on board on that.

(No verbalized response.)

THE COURT:  Well, Mr. Pelletier, you stand up, sir.  I'm going to ask you this, to make sure – you're the man on trial here, we all have our various roles in this trial, but it's your guilt or innocence that's at stake here, and if you're found guilty, you would be subject to the penalties imposed by law at that time, and if you're found not guilty, you'd have the benefit of that verdict.

Have you discussed with your attorney the issue as to whether or not the jury may consider all of the evidence in this case, including evidence pertaining to alleged incidents in Hudson and Pelham, even though the

remaining indictments pertain only to Derry, one, and four as to Manchester?

THE DEFENDANT:  Yes.

THE COURT:  All right.  And you, you have agreed with that, and you're prepared to have this evidence considered by the jury as it pertains to credibility.

THE DEFENDANT:  Yes.

THE COURT:  So that if things do not go your way, you wouldn't have the opportunity – because you're on the record, I wanted to be just straightforward with you, and I'm not saying it's a mistake, I'm doing this for everybody's protection – you wouldn't have the ability on an appeal to say that your prior counsel made a decision without you, that you weren't consulted, and after all is said and done, and the verdicts are in, that you did not want to have that evidence considered.

And, you know, anybody can be a Monday morning quarterback and look back, but I want you on the record now for your protection, my protection, the lawyers on your left and your right, everybody in here.

So you agree, you have no objection to all of the evidence being considered, it can be referred to in closing arguments, including the evidence as to Pelham particularly, and the orange chair and any DNA evidence, even though, when it comes to guilt or innocence, they must only consider the five remaining indictments, but all of the evidence that has been submitted in this case may be considered by the jury otherwise, otherwise on credibility, believability issues.  You understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Any questions you want to ask me about this?

THE DEFENDANT:  No.

THE COURT:  And so, again, to restate the obvious, your agreement to this now on the record, you personally, will make it, I won't say impossible, but extremely difficult for you to argue this as an appeal issue later on, either with prison lawyers, or with, or with different lawyers.

THE DEFENDANT:  Right.

THE COURT:  Because you could, you wouldn't be able to shake off the fact that Judge Hampsey [gave] you this opportunity and addressed you directly and had you speak directly to me on the record about this.  So you have sort of bought into this, you've accepted this, you've adopted this, and you wouldn't be able to shake loose of this later on.

THE DEFENDANT:  Yes, Your Honor.

(Tr. at 834, l. 13 through 839, l. 10.)  Shortly after that colloquy took place, the jury was brought into the courtroom, and Judge Hampsey began his instructions:

This case began with a number of indictments that were read to you by the deputy clerk when the case began.  The parties, with the approval of the Court, have now agreed to proceed to a conclusion of this case with fewer indictments than were originally brought before you.

Specifically, instead of proceeding with the original 32 indictments that were read to you, we're going to proceed with five only of those indictments. And this has come about due to legal considerations, it has no bearing on the factual basis of this case.

You are not to consider the indictments that are no longer before you, the 27 that have been withdrawn, nor are you to guess or speculate or have any concern for the legal reasons as to why 27 of the indictments have been removed from this case and removed from your consideration.

(Tr. at 841, l. 19 through 842, l. 13.)  The judge then read the five remaining indictments, and followed that recitation with additional instructions:

>       Now, you will consider, for purposes of guilt or innocence, returning a verdict of guilty or not guilty, [on] only those five indictments.  However, you may consider all of the evidence that has been presented in this case for purposes of determining the credibility, that is, the believability of all of the witnesses that you have heard and the significance of any item of evidence and its importance to you.
>
>       And so while you may consider the evidence in this case that's been presented, uh, and including other matters that go beyond the scope for these five indictments, any evidence that does not pertain to the guilt or innocence of these five indictments, may only be considered by you on credibility issues, making a determination individually as a jury as to the credibility, the believability of the witnesses that you have heard, and the importance [of] any item of evidence.
>
>       . . . .
>
>       You know that there's been this situation that I've explained to you, and again, you must follow my instructions.  Again, the guilt or innocence of the defendant on trial will be considered and determined by you with respect to these five indictments.
>
>       The 27 have been removed, again, to repeat this, for legal reasons.  You are charged not to speculate, guess, or have a concern as to why the others are not being submitted to you.  And again, this decision is, that was done for legal considerations and reasons, and has no bearing on the factual basis of this case.

(Tr. at 845, l. 16 through 847, l. 11.)

23

Petitioner contends his counsel provided ineffective
assistance by failing to move for a mistrial under the
circumstances described above.  In a similar case, in which a
habeas corpus petitioner based an ineffective assistance claim on
his attorney's failure to request a mistrial, a court of appeals
explained:

> We have observed that a "conscious and informed
> decision on trial tactics and strategy cannot be the
> basis for constitutionally ineffective assistance of
> counsel unless it is so ill chosen that it permeates
> the entire trial with obvious unfairness."  Under this
> indulgent standard, we cannot say that Lowe's strategic
> decision to avoid seeking a mistrial was
> constitutionally deficient.  In deciding whether to
> seek a mistrial, Lowe was required to balance the harm
> caused by the prosecutor's improper question against
> the legitimate possibility that a new trial would
> present less propitious prospects for his client.  Lowe
> opted to cast his lot with a jury that, although
> possibly feeling threatened, had heard favorable
> testimony from Love and Grant, rather than risk
> retrying the case with Love and Grant appearing as
> hostile witnesses.  This decision, while debatable, was
> not objectively unreasonable.

Ward v. Dretke, 420 F.3d 479, 491 (5th Cir. 2005) (footnotes
omitted).

Here, petitioner's counsel was also required to balance harm
arising from the Pelham and Hudson evidence against the
legitimate possibility that a new trial without that evidence
would present a less propitious prospect for petitioner.  Based

24

on defense counsel's theory of the case, the decision not to move
for a mistrial was not objectively unreasonable.  At a bench
conference that took place on day three of the trial, defense
counsel explained his theory of the case:  "The fact is that
she's not credible, and that she's not credible because she's
inconsistent. . . .  She gives inconsistent statements [to the
police].  That's the entire defense."  (Tr. at 353, l. 23 through
354, l. 4.)  Many of the inconsistent statements with which
defense counsel challenged the victim's credibility concerned the
events that gave rise to the Pelham and Hudson charges.  That
information was important to defendant's case and, given the
choice between withdrawing the Pelham DNA evidence (which
bolstered the victim's credibility) and losing the Pelham/Hudson
inconsistent statement evidence, or keeping the DNA evidence in,
along with the Pelham/Hudson impeachment evidence, defense
counsel plausibly determined that the benefits of the
Pelham/Hudson credibility evidence outweighed the detriments of
the DNA evidence.  By not moving for a mistrial, petitioner's
counsel preserved the opportunity to argue the Pelham/Hudson
credibility evidence at the current trial.  While counsel's

25

strategy in this case might also be subject to debate, in hindsight it was not objectively unreasonable.[4]

Because petitioner's counsel did not provide objectively unreasonable assistance with regard to either the severance or mistrial issues, respondent is entitled to summary judgment on Ground 2.

Ground 4

Petitioner claims that he was convicted in violation of the Fourteenth Amendment due process guarantee and his Sixth Amendment right to a fair trial, because the trial judge failed to conduct a proper colloquy with him before depriving him of his right not to be tried by evidence of uncharged bad acts.  Relying on Avery v. Cunningham, 131 N.H. 138, 142–44 (1988), respondent argues that he is entitled to summary judgment on Ground 4 because petitioner procedurally defaulted that issue by failing to raise it in his direct appeal.  Petitioner objects and also moves for summary judgment on the merits on Ground 4.

---

[4]  In addition, the state court may well have denied a mistrial motion on other grounds, e.g., because the uncharged misconduct evidence was admissible in any event to prove motive, intent, plan, etc.  See N.H. R. Evid. 404(b).

As with Grounds 1 and 3, Ground 4 may have been vulnerable to a procedural default defense when it was presented in petitioner's motion for a new trial.[5]  However, the trial court's ruling on the merits negated any procedural default.  <u>See</u> <u>Ylst</u>, 501 U.S. at 801.  Accordingly, respondent is not entitled to summary judgment on Ground 4 on the basis of procedural default.

Turning to the merits, petitioner is not entitled to summary judgment.  Petitioner's right to preclude evidence of uncharged bad acts is a right granted by the New Hampshire Rules of Evidence.  <u>See</u> N.H. R. EVID. 404(b).  "Violation of a rule of evidence does not itself amount to a constitutional violation, which is a necessary predicate for a habeas claim."  <u>Evans</u>, 466 F.3d at 145 (citing <u>Kater v. Maloney</u>, 459 F.3d 56, 64 (1st Cir. 2006)).  An evidentiary error is a proper basis for habeas relief only if it "result[s] in such fundamental unfairness to the defendant as to constitute a due process violation."  <u>Evans</u>, 466 F.3d at 145 (quoting <u>Chambers v. Mississippi</u>, 410 U.S. 284 (1973)).  "The Supreme Court has 'defined the category of [evidentiary] infractions that violate "fundamental fairness"

---

[5] In his motion for a new trial, Pelletier argued that "the colloquy that followed was for everybody's protection <u>except</u> the defendant's, the only person in the courtroom who <u>didn't</u> understand the ramifications of what was being done."  (Pet., Appx. at 18.)

very narrowly.'"   Kater, 459 F.3d at 61 (quoting Dowling v.
United States, 493 U.S. 342, 352 (1990)).


    Under Boykin v. Alabama, 395 U.S. 238 (1969), on which
petitioner relies for the proposition that he was entitled to a
proper colloquy, waiver of a constitutional right cannot be
accomplished "without an affirmative showing that it was
intelligent and voluntary."   Id. at 242.   An issue regarding the
adequacy of the colloquy arises in this case only if petitioner
was faced with the possibility of relinquishing his
constitutional rights to due process or a fair trial.   He was in
no such position.   To be sure, the course of action presented to
petitioner involved allowing the jury to consider evidence of
uncharged bad acts relative to the victim's credibility.   But,
much of that very same evidence, in the form of the victim's
testimony, was also central to petitioner's theory of defense.
In the view of petitioner's counsel, petitioner had something to
lose, but more to gain, by allowing the jury to consider evidence
of his uncharged bad acts.   On that view, which is not
unreasonable, petitioner was not asked to acquiesce in "the
introduction of . . . evidence [that was] so extremely unfair
that its admission violate[d] 'fundamental conceptions of
justice.'"   Dowling, 493 U.S. at 352 (quoting United States v.

28

Lovasco, 431 U.S. 783, 790 (1977)).  Consequently, Pelletier was
not placed in a position in which his constitutional rights to
due process or a fair trial were at risk.  Arguably, at least for
purposes of this petition, no colloquy was necessary at all, yet
the trial judge insisted upon one, and gave petitioner ample
opportunity to understand the risks and to seek any
clarification.

   Ground 4 also suffers from another fundamental flaw: its
premise that petitioner relinquished his right not to be tried on
evidence of uncharged bad acts.  He did no such thing.  The jury
was expressly instructed not to consider the Pelham and Hudson
evidence when determining petitioner's guilt or innocence of the
Derry and Manchester charges.  Rather, it was instructed that its
consideration of the Pelham and Hudson evidence was limited to
the issue of the victim's credibility, the very issue Pelletier's
counsel identified as his "entire defense."  And, as noted above,
the jury may be presumed to have followed the instructions given
by the judge.  See Sampson, 486 F.3d at 47.

   Because petitioner neither gave up a constitutional right
nor was presented with the option of doing so, he is not entitled

to summary judgment on Ground 4, and he cannot prevail on that claim.  Judgment shall be entered in favor of respondent.

Ground 5

Petitioner claims that he was convicted in violation of the Fourteenth Amendment due process guarantee and his Sixth Amendment right to a fair trial because the trial judge violated his marital privilege, by allowing his wife to testify about their sexual relationship.  Respondent argues that he is entitled to summary judgment on Ground 5 on the merits, but also argues that he is entitled to summary judgment on the basis of procedural default, because: (1) both petitioner's initial notice of appeal and the state supreme court opinion resulting from that appeal, Pelletier, 149 N.H. at 246-49, addressed the marital privilege exclusively on state law grounds; (2) federal habeas corpus relief is not available to correct errors of state law, see Evans, 466 F.3d at 145; and (3) under Avery, 131 N.H. at 142-44, it is now too late for petitioner to present the state court with federal constitutional claims based upon an asserted violation of his marital privilege.

While stated in terms of procedural default, the gravamen of respondent's argument is that petitioner has not exhausted the

federal claims raised in Ground 5 and cannot now exhaust them,
under various state procedural rules.

"[E]xhaustion is a prudential principle rather than a
jurisdictional limitation, so a state may waive the defense of
nonexhaustion." Pike, 492 F.3d at 71 (citing 28 U.S.C. §
2254(b)(3); Granberry v. Greer, 481 U.S. 129, 131 (1987);
Strickland, 466 U.S. at 684).  "It is hornbook law that waivers
of exhaustion will not lightly be inferred but, rather, must be
clear and explicit." Pike, 492 F.3d at 72 (citing 28 U.S.C. §
2254(b)(3); Mercadel v. Cain, 179 F.3d 271, 276 (5th Cir. 1999)).

Here, respondent clearly and explicitly waived the defense
of exhaustion when he stated, in his answer, that "[t]he
respondent does not dispute the court's assessment that the
petitioner has exhausted his state court remedies."  (Answer ¶
18.)  Respondent's statement in this case is just as clear and
explicit as the concession in Pike, 492 F.3d at 71-72 ("Having
reviewed the[ ] materials, undersigned counsel believes that the
petitioner is correct in her assertion that [the] claims
presented in Grounds one through three of her petition have been
exhausted."), which the court of appeals found to be
"unmistakably clear," and, thus, sufficient to satisfy the

31

"rigorous standard" set out in 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.")  The long and the short of it is that respondent's argument might well have carried the day had he challenged the magistrate judge's determination that Ground 5 was properly exhausted, see Coleman, 501 U.S. at 735 n.1, but, by conceding exhaustion, respondent waived the opportunity to make the procedural default argument he advances with respect to Ground 5.[6]

Because respondent waived any claim that petitioner failed to exhaust Ground 5, and that waiver is not subject to rescission, see Pike, 492 F.3d at 72-73, respondent is not entitled to summary judgment on Ground 5 on the basis of procedural default.  Accordingly, the court turns to respondent's arguments on the merits.  Petitioner does not address Ground 5 on the merits.

---

[6] In Coleman, the Supreme Court explained that "if [a] [habeas] petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas," 501 U.S. at 735 n.1 (parallel citations omitted), but there can be no such procedural default here because respondent clearly and explicitly conceded that petitioner did not fail to exhaust state remedies.

Respondent claims entitlement to summary judgment on Ground 5 on the merits because, generally, violation of a state rule of evidence, standing alone, does not rise to the level of a constitutional violation and, thus, does not provide a basis for habeas corpus relief.  However, petitioner faces another fundamental problem with regard to Ground 5: "An accused has no federal constitutional right to bar a spouse from testifying at his trial."  Labbe v. Berman, 621 F.2d 26, 27 (1st Cir. 1980) (citing Trammel v. United States, 445 U.S. 40 (1980)); see also Byrd v. Armontrout, 880 F.2d 1, 9–10 (8th Cir. 1989) ("The policies furthered by proper application of the marital privilege in any of its forms are quite distinct from the concerns for fairness and reliability protected by the Due Process Clause. Thus, Byrd's argument that the privilege was misapplied, even if it were correct, would not establish a constitutional due process violation."); Simpson v. Neal, 986 F.2d 1424 (table opinion), 1993 WL 47204, at *3 (7th Cir. Feb. 24, 1993) ("Clearly, recognition of the marital privilege is not necessary to afford due process.") (citations omitted).  Thus, while there are some circumstances in which "an evidentiary error may result in such fundamental unfairness to the defendant as to constitute a due process violation," Evans, 466 F.3d at 145, violation of a defendant's state–law marital privilege is not one of those

33

circumstances.  Accordingly, respondent is entitled to judgment as a matter of law on Ground 5.

Ground 6

Petitioner claims that he was convicted in violation of the Fourteenth Amendment due process guarantee and his Sixth Amendment rights to a fair trial and effective assistance of counsel, because the trial judge improperly allowed an expert witness to testify outside her area of expertise (Ground 6(a)) and to testify to matters defense counsel had not previously been made aware of (Ground 6(b)).  Respondent makes the same procedural default argument as he did for Ground 5.  Because that argument is not persuasive, for the reasons already given, the court turns to respondent's argument that he is entitled to judgment as a matter of law on Ground 6 on the merits.  As with Ground 5, petitioner does not address the merits of Ground 6.

Ground 6 is another claim based upon the application of state-law evidentiary rules, and respondent's argument on Ground 6 is essentially the same one he made for Ground 5.  That argument is persuasive.  Even if Dr. Hazard's testimony had been admitted in violation of the relevant state-law rules of evidence, such an evidentiary error would not render petitioner's

trial so fundamentally unfair that it violated his federal due process rights.  See Evans, 466 F.3d at 145.

The victim's testimony fully supported the five guilty verdicts.  Regarding the importance of Dr. Hazard's testimony, none of the five indictments charged Pelletier with penetration. Thus, the State had no need to explain away the victim's intact hymen in order to prove its case.  Dr. Hazard's testimony about the hymen's ability to heal itself may have mildly enhanced the credibility of the victim's testimony about other conduct by Pelletier that allegedly did involve penetration.  But, ultimately, that evidence was peripheral rather than central to the State's case. Because introduction of Dr. Hazard's testimony did not render petitioner's trial fundamentally unfair, respondent is entitled to judgment as a matter of law on Ground 6.

Ground 8[7]

Petitioner claims that his sentence violates the Fourteenth Amendment due process guarantee and his Eighth Amendment right against cruel and unusual punishment because the trial judge

---

[7] The petition originally included a Ground 7, but petitioner has waived that claim.

sentenced him to consecutive sentences without having the
constitutional or statutory authority to do so.  Relying on
Avery, 131 N.H. at 142–44, respondent argues that he is entitled
to summary judgment on Ground 8 because petitioner procedurally
defaulted the issue by failing to present it in his direct
appeal.  Petitioner objects and also moves for summary judgment
on Ground 8.

Petitioner first presented the sentencing issue in a
pleading titled "Petition to Correct Illegal Sentence – or – for
Habeas Relief."  The State objected on the merits.  The motion
was denied in a summary order, and petitioner appealed.  In its
order declining petitioner's appeal, the state supreme court
wrote: "In light of the decision in Duquette v. Warden, N.H.
State Prison, 154 N.H. [737 (2007)], the notice of appeal is
declined."  (Pet'r's Mot. to Lift Stay (document no. 17), at 2.)
Duquette is an opinion addressing, on the merits, the very same
issue petitioner raised in his petition to correct his sentence.
In Duquette, the New Hampshire Supreme Court held, among other
things, that when the New Hampshire legislature repealed former
RSA 651:3, III, in 1975, it restored "the common law authority of
judges to impose consecutive sentences."  154 N.H. at 744.

Respondent argues that Ground 8 "was not raised until the petitioner's second post-conviction filing, and this failure constitutes yet another procedural default." (Resp't's Mem. of Law (document no. 26-2) at 14.)  While there might be procedural grounds that would have supported a decision by the state supreme court to decline Pelletier's appeal, it plainly did not rely on any such grounds.  Nor is there a previous superior court decision resting on procedural grounds to which the supreme court's order could be related back.  Accordingly, respondent is not entitled to summary judgment on Ground 8 on the basis of procedural default.  See Ylst, 501 U.S. at 801.

Turning to the merits, petitioner argues that he is entitled to judgment as a matter of law on Ground 8 because: (1) he had a constitutional right to be informed of the sentences he could receive if he were convicted of the crimes with which he was charged; and (2) no New Hampshire statute authorizes the imposition of consecutive sentences for the crimes of which he was convicted.  In petitioner's words: "Since the law fails to specify that punishments may be accumulated consecutively, the public is without constitutionally required notice of the risk of such punishments." (Pet'r's Mem. of Law (document no. 27-3) at 4.)  Respondent does not engage on the merits.

37

The New Hampshire Supreme Court ruled against petitioner on the consecutive sentence issue on the merits, by referring to its opinion in Duquette.  That ruling is entitled to AEDPA's deferential standard of review.  See Teti, 507 F.3d at 56; Dugas, 506 F.3d at 7; Norton, 351 F.3d 5.  However, the relevant standard of review is of little moment, because even under de novo review, petitioner would not prevail.

"It is a fundamental tenet of due process that '[no] one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.'"  United States v. Batchelder, 442 U.S. 114, 123 (1979) (quoting Lanzetta v. New Jersey, 306 U.S. 451, 453 (1939)).  "So too, vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute."  Batchelder, 442 U.S. at 123 (citations omitted).

Here, petitioner does not argue that the sentencing provisions relating to either of the crimes he was convicted of were, individually, unclear about the legal consequences of the prohibited conduct.  Rather, he argues that the imposition of consecutive sentences was unconstitutional because the New Hampshire criminal code expressly requires the imposition of

consecutive sentences in only three circumstances – committing a
new offense while on release,[8] bail jumping,[9] and committing an
assault while in prison[10] – none of which apply to him.  In
petitioner's view, the lack of a provision generally authorizing
the imposition of consecutive sentences, or authorizing them for
the crimes he was convicted of, created an impermissible lack of
clarity concerning the consequences of his unlawful conduct.
That argument is not persuasive.

"A challenge to the term of a sentence is not a cognizable
constitutional issue if the sentence falls within the statutory
range."  Benn v. Greiner, 294 F. Supp. 2d 354, 368 (E.D.N.Y.
2003), rev'd on other grounds, 402 F.3d 100 (2d Cir. 2005),
(citing White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992)). "The
decision whether to impose sentences concurrently or
consecutively is a matter of state criminal procedure and is not
within the purview of federal habeas corpus."  Cacoperdo v.
Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (citing Ramirez v.
Arizona, 437 F.2d 119, 120 (9th Cir. 1971)).  A criminal
defendant might have a due process claim, cognizable on federal

---

[8] N.H. REV. STAT. ANN. ("RSA") § 597:14–b, II.

[9] RSA 642:8, IV.

[10] RSA 642:9, V.

habeas review, if a state court imposed consecutive sentences in the face of a clear legislative directive mandating concurrent sentences.  See United States v. White, 240 F.3d 127, 135 (2d Cir. 2001) (holding, in federal criminal case, that consecutive "sentences are prohibited only if Congress did not intend separate punishments").

Here, however, petitioner is not arguing that the New Hampshire criminal code expresses a clear legislative directive mandating concurrent sentences for his offenses of conviction. Rather, he argues that in the absence of a statute clearly expressing a legislative directive authorizing consecutive sentences for his offenses, due process prohibits the imposition of consecutive sentences, and requires sentences to be concurrent.  Petitioner's argument does not take into account the Duquette court's determination that the repeal of former RSA 651:3, III, was a direct legislative "restoration of the common law authority of judges to impose consecutive sentences."  154 N.H. at 744.  More importantly, the United States Supreme Court has never held, or even hinted, that judicial authority to impose consecutive sentences must be expressly codified to satisfy the constitutional requirement of due process.  Thus, the New Hampshire Supreme Court did not commit a constitutional error

when it "conclude[d] that a person of ordinary intelligence would understand that a person guilty of multiple counts of aggravated felonious sexual assault could be subject to separate sentences for each count." Id. at 745.  Accordingly, petitioner is not entitled to judgment as a matter of law on Ground 8, and cannot prevail on that claim.  Judgment shall be entered in favor of respondent.

### Conclusion

For the reasons given, respondent's summary judgment motion (document no. 26) is granted; petitioner's summary judgment motion (document no. 27) is denied; and as respondent is either entitled to judgment, or petitioner cannot prevail, on the claims asserted, judgment is entered in favor of respondent.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

August 6, 2008

cc:  Steven Pelletier, pro se
     Stephen D. Fuller, Esq., NH Attorney General's Office
     John Vinson, NH Department of Corrections

41